UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.:

SURGERY CENTER OF VIERA, LLC,

 *Plaintiff*,

vs.

CIGNA HEALTH AND LIFE INSURANCE COMPANY,
HARRIS MEDICAL PLAN, AND
HARRIS CORPORATION,

 *Defendants*.
_____/

## COMPLAINT

 Plaintiff, Surgery Center of Viera, LLC ("SCV"), as assignee, authorized representative, and medical provider of patient / insured D.G., sues Defendants, Cigna Health and Life Insurance Company ("Cigna," claim administrator), Harris Medical Plan ("Plan"), and Harris Corporation ("Harris," Plan sponsor / Plan administrator), as follows:

### NATURE OF THE ACTION, PARTIES, JURISDICTION, AND VENUE

 1. This action arises, in part (Count I), under the Employment Retirement Income Security Act of 1974, Title 29, United States Code, Sections 1000-1461 ("ERISA"), for defendants' administrative record production failures relating to the subject D.G.-related health insurance claim, implicating Title 29, United States Code, Sections 1024(b) and 1132(c)(1) and Title 29, Code of Federal Regulations, Section 2575.502c-1 to be precise.[1] This action also arises,

---

[1] One of the many problems created by defendants' refusal to timely produce the administrative record (discussed in greater detail below) is SCV's inability to confirm with certainty that the underpayment aspect of this dispute emanates solely from a pricing dispute. Federal authority makes clear that a "rate of payment" dispute is subject to Florida state law rather than ERISA federal law. Because defendants' legally, statutorily, and perhaps contractually repugnant

1

in part (Counts II-V), under Florida state law for defendants' wrongful, unsubstantiated underpayment of the health insurance benefits owed to SCV for medical services SCV provided to Plan participant / patient / insured, D.G., on October 28, 2016.[2]

2. At all material times, SCV was a medical provider and a Florida limited liability company with its citizenship (*i.e.*, principal place of business / "nerve center") in Viera, Florida, Brevard County. SCV is *sui juris* in all respects. SCV's members are as follows: (a) Dr. Ara Deukmedjian, domiciled in Brevard County, Florida, (b) Sun Deukmedjian, domiciled in Brevard County, Florida, and (c) Dr. Bharat Patel, domiciled in Brevard County, Florida. At all material times, SCV was the authorized representative of D.G. with an assignment of benefits as well, having provided the subject medical services to D.G. for which a proper amount of insurance benefits was / is due and owing.

3. At all material times, Cigna was an insurance company with its citizenship (*i.e.*, principal place of business / "nerve center") in the State of Connecticut and engaged in the business of selling and / or administering health insurance and / or deciding health insurance claims (*i.e.*, claim administering).

4. Upon information and belief, Harris Corporation, was / is incorporated in the State of Delaware with its principal place of business / headquarters in the State of Florida and engaged

---

refusal to timely produce the administrative record has stymied SCV's ability to make heads-or-tails of the reasons why defendants tendered an approximate 47% claim payment, SCV reserves the right to amend this complaint to expound on Counts II-V relating to the owed insurance benefits once defendants are made to produce the germane documentation / information (often called an administrative record) upon which the claim payment decision was based (Count I). Given the ongoing harm being created by defendants' administrative record production failures, legal action regrettably could not wait any longer.

[2] Because of the administrative record production failure (Count I) mentioned in footnote 1, *supra*, and all the additional documentation / information doubtless found therein (that should have been in SCV's possession a long time ago), SCV reserves the right to amend this complaint to expound on Counts II-V related allegations.

(in pertinent part here) in the administration and / or sponsorship of the Plan.[3, 4]

5. This Court possesses original jurisdiction pursuant to Title 29, United States Code, Section 1132(c)(1), and Title 28, United States Code, Section 1331 at least with respect to Count I. Pursuant to Title 28, United States Code, Section 1367, the Court has pendent jurisdiction over Counts II-V.

6. Venue is proper in the Middle District Court of Florida pursuant to Title 28, United States Code, Section 1391(b), since, for examples, (a) a substantial part of the events or omissions giving rise to the subject action occurred in this jurisdiction, such as the subject medical services, defendants' underpayment of the subject insurance claim both at the initial claim and subsequent pre-suit appeal stages, and defendants' refusal to supply germane documentation / information required by federal law (and also Florida Statute, for that matter, and also likely the subject insuring agreement), (b) Harris is headquartered in Melbourne, Florida, and (c) the Orlando Division of this Court has personal jurisdiction (due to minimum contacts in this forum) over CIGNA as well.

7. All conditions precedent to the institution of this action (*e.g.*, administrative pre-suit appeals) have occurred, been performed, been waived, or were futile.

## COMMON ALLEGATIONS

8. At all material times, D.G. was covered by the Plan as evidenced by defendants' partial payment of the subject claim. Upon information and belief, the Plan's Group number was / is 3337001 and the patient's I.D. number was / is 00021083002. The assigned claim reference

---

[3] Upon information and belief, the Plan is self-funded. If the Plan was / is fully-insured (as opposed to self-funded), Harris would not need to be part of the benefits amount dispute (Counts II-V); *i.e.*, could be dismissed out of this action once the administrative record is produced and the administrative record production penalty is satisfied (Count I).

[4] Upon information and belief, Harris is on the cusp of merging with (or recently has merged with) L3 Technologies. Upon information and belief, the combined company name is (or would be) L3Harris Technologies, Inc.

number was / is 7431632294918.

9. At all material times, in exchange for valuable premiums paid, the Plan (Ex. A) was in full force and effect and was a legally valid and binding contract in the State of Florida.

10. The Plan (Ex. A.) provides in pertinent part, as follows:

> Maximum reimbursable charge (MRC) — The lesser of these two charges: the provider's normal charge for a similar service or supply or a charge representing a percentage of what is ordinarily paid for a service or supply in a geographic area. The healthcare professional may bill the customer the difference between the healthcare professional's normal charge and the MRC as determined by the benefit plan, in addition to applicable deductibles, copays and coinsurance.

Ex. A, IV 4 at 4.

11. The Plan covered the medical services provided by SCV to D.G. and defendants were obligated to properly indemnify SCV for such services.

12. At all material times leading up to the subject medical services received from SCV, D.G. suffered from Cervicalgia, HNP cervical spine with myelopathy, stenosis of the cervical spine, degenerative disk disease at multiple levels of the spine, spondylolisthesis of the cervical spine, neurological deficit of the upper extremities, and myelopathy of the cervical spine.

13. Prior to performing surgery on D.G., SCV requested a precertification of benefits from Cigna.

14. By two separate letters dated September 21, 2016, and September 27, 2016, Cigna approved all of the requested medical codes for D.G.

15. On September 19, 2016, by phone call with SCV, Cigna again pre-certified / authorized the subject procedures.

16. On October 28, 2016, D.G. underwent surgery at SCV to remedy D.G.'s medical conditions.

17. SCV's billed charges for the subject medical services rendered to D.G. totaled

$359,287.00, and a claim package was submitted to Cigna relating the same. Again, claim reference number 7431632294918 was assigned.

18. By way of a document called the provider explanation of benefits ("EOB") dated December 24, 2016, on Cigna letterhead, Cigna underpaid the subject claim, tendering $117,433.71.

19. Again, by all appearances, this is not a coverage dispute (*i.e.*, "right of payment claim") because defendants properly conceded coverage *via* the $117,433.71 partial claim payment and did not list any medical judgment related basis (*i.e.*, coverage-related basis) for partial payment amongst the claim decision reasons set forth in the EOB. Rather, this is a damages dispute (*i.e.*, "rate of payment claim") pertaining solely to the underpayment (from the Harris defendants' coffers if the Plan is self-funded, which it likely is) that was predicated on Cigna's aberrant claim decision-making.

20. On December 27, 2016, Cigna sent SCV a letter that stated, in pertinent part, as follows:

> We processed the billed charges that do meet the criteria. You will receive an Explanation of Payment (EOP) outlining the total payment from Cigna and the amount, if any, your patient owes. The attached claim review detail shows the billed charges that do not meet the criteria for additional or separate payment. This detail includes a line-item listing of denied and adjusted payments which total $27,979.00.

21. SCV asked Cigna through Viant (Cigna's unilaterally selected repricing agent) to re-process the subject claim so as to tender an appropriate amount of benefits. SCV contacted Viant as directed by Cigna's December 24, 2016, EOB, which stated, in pertinent part, that Cigna "reduced the allowed amount based on Viant's facility bill review program, if you have questions about the discount contact Viant. . ."

22. SCV's appeal package to Viant, sent January 15, 2017, and phone call with Viant

5

on February 14, 2017, yielded no explanation or reasoning as to the underpayment of the claim and did not result in any further payments on the D.G. claim.

23. By appeal form dated June 23, 2017, SCV appealed the claim decision this time directly through Cigna.

24. By letter dated July 7, 2017, Cigna stated, in pertinent part, as follows:

> We are denying your request for an appeal. We received it too late. Cigna must get an appeal within a certain timeframe. This timeframe is one hundred eighty (180) calendar days] from the date we processed your claim, prepared the explanation of benefits (EOB) statement or sent an adverse determination (denial) letter. The EOB date for this claim was December 20, 2016. We received your appeal request too late after the deadline.

25. By letter dated July 19, 2017, SCV responded, in pertinent part, as follows:

> We are in receipt of your letter stating that our appeal is past timely filing limit of 180 days however, we have made attempts with Viant to re-negotiate this claim in an attempt to lessen the patient responsibility for out of network provider. Attached is supporting documentation that shows the last communication with Viant to negotiate this claim was on 2-21-17 with Christopher Talley via email. Due to the delay in negotiations with Viant, the appeal was not sent in 180 days from the original process date. However, as you can clearly see from the documentation that we are well within the 180 days from the last communication with Viant to settle this claim. In fact, 180 days from last communication would be August 8, 2017. We request that you review our appeal as the attempt to negotiate with Viant failed, thus leaving an exorbitant patient responsibility. Please see the attached original appeal letter for details in regards to the appeal.

26. By letter dated August 15, 2017, Cigna responded, in pertinent part, that "Unfortunately, we're unable to review this appeal. Our records show you've exhausted or used up all of the appeal levels allowed."

27. Without explanation, Cigna then tendered two more payments by EOB's dated February 16, 2018, and February 19, 2018. These payments totaled an additional $48,746.00.[5]

28. By letter dated October 22, 2018, Jeffrey Greyber, Esq., of Callagy Law, P.C.,

---

[5] This is still only an unexplained total paid of $166,179.71 in relation to a total billed of $359,287.00.

("Counsel"), advised Cigna that he represented SCV.  The letter contained a request for the entire administrative record / claim file pursuant to the law (the United States Code and, to some extent, Florida Statute) and / or the Plan.  This letter read, in pertinent part, as follows:

> Regarding our assessment of the carrier's claim(s) denial, underpayment, or delayed non-decision, please promptly provide us with a copy of the entire administrative record.  The administrative record should consist, at minimum, of the following:  (1) Complete, certified copies of all plan documents (master policy, summary plan description, benefit booklet, certificate of coverage, or the like) in effect at the times of the subject medical services and / or at the times of any claims made relating to the subject medical services; (2) Copies of all correspondence and / or documents exchanged between the carrier and the insured (or any insured representatives) regarding the subject medical services and / or any claims made relating to the subject medical services; (3) Copies of all correspondence and / or documents exchanged between the carrier and SCV regarding the insured, the subject policy / plan, the subject medical services, and / or any claims made relating to the subject medical services; (4) Copies of all correspondence and / or documents exchanged between the carrier and any other party (less attorney-client privileged data, of course) regarding the subject medical services and / or any claims made relating to the subject medical services; (5) Copies of all of the insured's SCV-related medical records in the carrier's possession; (6) Identification of all policy / plan language upon which the claim(s) decision-making was based; (7) Contact information for any medical professionals enlisted by the carrier regarding the subject medical services and / or any claims made relating to the subject medical services; (8) Transcripts and audio recordings of any recorded statements or phone calls between the carrier and the insured (or any representatives of the insured) regarding the subject medical services and / or any claims made relating to the subject medical services; (9) Transcripts and audio recordings of any recorded statements or phone calls between the carrier and SCV regarding the subject medical services and / or any claims made relating to the subject medical services; (10) Transcripts and audio recordings of any recorded statements or phone calls between the carrier and any other party (less any attorney-client privileged data, of course) regarding the subject medical services and / or any claims made relating to the subject medical services; (11) All EOBs relating to any claims that were made relating to the subject medical services; (12) All SCV billing  and / or claim(s) submission paperwork received by the carrier relating to the insured; (13) All evidence of any payment(s) made by the carrier relating to any claims that were made relating to the subject medical services; (14) All guidelines, manuals, written protocol, medical treatises, medical literature, and / or the like upon which the carrier partially or wholly based its claim(s) decisions; (15) All billing paperwork, rate schedules, data or formulas relating to "usual, customary, reasonable" (UCR) medical provider charges, and / or any other data upon which the carrier has based its decisions as to how much indemnity to afford on the subject claim(s); and (16) Copies of any documents relating to any reinsurance relating to the subject policy /

plan, (17) Copies of any documents relating to any arrangement / agreement between the plan administrator and the claim administrator relating to end of year cost savings between the two (i.e., sharing / splitting of monies saved in relation to the policy / plan due to claim underpayments / denials), which such arrangements / agreements are often called "Level Funded Plans." (18) Copies of any other documents that the carrier partially or wholly relied on in deciding any claim(s) relating to the subject medical services.

Equipped with this legally required documentation / information, we will be in a position to assess and carry out the next step (e.g., pre-suit appeal(s), complaints / grievances with state offices of insurance regulation, litigation, and / or et cetera). If the carrier contends that our administrative record production request needs to be directed, in whole or in part, to some other person or entity (e.g., an insured's employer or plan sponsor), we expect the carrier to promptly forward our administrative record production request to that person or entity and carbon copy us on such correspondence.

Thank you in advance for the anticipated prompt response and cooperation. We look forward to working with the carrier towards rectifying the subject claim(s) denial, underpayment, or delayed non-decision.

29. Radio silence from Cigna; *i.e.*, there has been no further correspondence and / or any production of records from Cigna as of the date of this filing.

30. SCV exhausted the pre-suit appeal process procedurally, and to the best of its ability substantively. "To the best of its ability substantively" because of the hindrance resulting from defendants' wrongful refusal to provide required / requested administrative records (and / or like records available per contract or Florida Statute requiring explanation / substantiation to the recipient of an adverse benefits determination, here SCV), in an effort to accomplish defendants' doing the right thing (*i.e.*, fully indemnifying SCV) sans litigation, to no avail. Hence, this lawsuit as SCV's regrettable last resort.

31. At all material times, Cigna was in agreement with Preferred Medical Claim Solutions ("PMCS") to secure discounted rates from providers (like SCV), which were secured here in relation to SCV.[6]

---

[6] Copies of the pertinent pages of the PMCS re-pricing contract procured on Cigna's s behalf (along with the PMCS

32.     The PMCS allowed amount / re-pricing contract (*see* Ex. B) was in full force and effect and was a legally valid and binding contract that established / developed (a) an allowed amount / re-pricing rate of 80% of SCV's billed charges less patient responsibilities (*e.g.*, co-pay, deductible, co-insurance) subject to the patient's annual out-of-pocket maximum, and (b) a 100% reimbursement rate for hard costs (*e.g.*, prosthetics / implants).

33.     According to the PMCS agreement, Cigna should have used the contracted 80% rate to calculate the allowed amount equaling $293,004.20.[7]  Taking into account the amount previously paid by Cigna / Harris (which such prior payment presumably already took patient responsibilities subject to out-of-pocket annual maximum into consideration), this leaves an outstanding amount of $126,824.49 in relation to the D.G. claim.[8]  This amount is exclusive of attorneys' fees, costs, interest, and / or extra-contractual exposure.

34.     SCV has suffered significant financial harm no matter how one slices this situation.  The financial harm by way of owed health insurance benefits is in excess of $75,000.00 (not including attorneys' fees, costs, or interest), if the negotiated 80% rate prescribed by Cigna's third-party re-pricing vendor PMCS is honored / enforced as it should be or even if rates comporting with the Plan were to be utilized in the allowed amount / re-pricing assessment.

35.     SCV exhausted the pre-suit appeal process (again, as best as it substantively could amidst defendants' administrative failures keeping it in the blind) in an effort to accomplish defendants' doing the right thing (*i.e.*, fully indemnifying SCV) sans litigation, to no avail.  Hence,

---

"client" list listing Cigna) are attached hereto as **Exhibit B**.

[7] This amount includes (under a PMCS re-pricing exercise) an implant / prosthetic reimbursed at 100%; again, implants are a hard cost paid by SCV that is subject to no re-pricing discount.  A copy of the implant / prosthetic invoice reflecting the cost of $27,873.00 is attached as **Exhibit C.**

[8] The outstanding amount / balance owed may be higher depending on what discovery (and the long-overdue administrative record) reveals.

this lawsuit as SCV's last resort.

**COUNT I – PETITION TO COMPEL PRODUCTION OF THE "ADMINISTRATIVE RECORD" AND FOR RECOVERY OF ADMINISTRATIVE RECORD PRODUCTION FAILURE PENALTY PURSUANT TO ERISA, 29 U.S.C. § 1024(B), 29 U.S.C. § 1132(c)(1) AND 29 C.F.R. § 2575.502c-1**

SCV re-alleges Paragraphs 1 through 35 as if fully set forth herein, and further alleges as follows.

36. This is a claim for production of the administrative record and for award of administrative record production failure penalty pursuant to Title 29, United States Code, Section 1132(c)(1), Title 29, United States Code, Section 1024(b), and Title 29, Code of Federal Regulations, Section 2575.502c-1.

37. By multiple letters (referenced in the above common allegations), SCV and its legal counsel asked defendants to provide the administrative record / germane documentation in relation to the D.G. claim, mainly (but not entirely) to learn defendants' reasons for the approximate 47% claim payment lowballing so that SCV could contest same in an educated fashion.

38. Although Cigna was / is absolutely a party responsible for production of the administrative record (either directly or *de facto*), the administrative record request was also put to Harris. *See, e.g.*, ¶ 28, *supra* ("If the carrier contends that our administrative record production request needs to be directed, in whole or in part, to some other person or entity (*e.g.*, an insured's employer or plan sponsor), we expect the carrier to promptly forward our administrative record production request to that person or entity and carbon copy us on such correspondence").

39. All defendants shirked their legally (whether that be United States Code or Florida Statutes) and likely also contractually prescribed administrative record production responsibilities.

40. Per the above-cited United States Code and Code of Federal Regulations, *see* ¶ 1,

*supra*, the $110.00 / day administrative penalty started accruing November 22, 2018.[9] From November 22, 2018, through the date of this complaint (July 5, 2019), 225 days have passed without defendants' satisfaction of the administrative record / germane record requests made in the aforementioned SCV / Callagy Law letters regarding the D.G. claim. So, as of the filing date of this complaint (July 5, 2019), the $110.00 / day administrative penalty totals $24,750.00. Of course, the $110.00 / day penalty will continue to accrue every day following July 5, 2019, up to and including whenever defendants oblige the germane documentation / information requests (*e.g.,* a certified copy of the policy / plan document, payment rate schedules / formulas, *et cetera*, *see* ¶ 28, *supra*) set forth in the October 22, 2018, letter noted above.

41.    SCV has no other adequate remedy other than this lawsuit to address the injuries it has suffered as a result of defendants' wrongful withholding of the administrative record / germane documentation.

42.    As a further result of defendants' refusal to produce the administrative record / germane documentation, SCV has been forced to retain legal counsel to represent it in this matter and is accordingly entitled to recover reasonable attorneys' fees and costs pursuant to Title 29, United States Code, Section 1132(g)(1) or Section 627.428 of the Florida Statutes or as otherwise awardable.

WHEREFORE, Plaintiff, Surgery Center of Viera, LLC, respectfully requests (a) Court order compelling defendants to produce the outstanding administrative record posthaste and allowing SCV thirty days following production of the administrative record to amend this complaint (if needed), (b) an award to SCV of the administrative record production failure penalty

---

[9] This represents a conservative penalty starting point, starting on Day-31 after SCV's, *via* Counsel, aforementioned October 22, 2018, letter. Depending on what the administrative record reveals (once defendants are made to produce same), the administrative penalty may have started sooner than November 22, 2018.

incurred by defendants pursuant to Title 29, United States Code, Section 1132(c)(1), Title 29, United States Code, Section 1024(b), and Title 29, Code of Federal Regulations, Section 2575.502c-1, (c) an award to SCV of attorneys' fees (pursuant to Title 29, United States Code, Section 1132(g)(1)) and costs incurred bringing this action, and (d) the Court's affording of any other relief the Court deems equitable, just, and / or proper.

## COUNT II – BREACH OF CONTRACT(S)

SCV re-alleges Paragraphs 1 through 35 as if fully set forth herein, and further alleges as follows.

43.     At all material times to this action and in exchange for a valuable premium, defendants provided health insurance to D.G. under the Plan, which is a binding and enforceable insurance contract under the laws of the State of Florida.

44.     The subject medical services were covered under the Plan, as evidenced by defendants' partial payment of insurance benefits relating to same.  The subject SCV bill should have been paid out pursuant to the reasonable, third-party re-pricing rates (the 80% established by PMCS of all non-implant HCFA line-items and 100% of all implant HCFA line-items because, again, implants are hard costs not subject to a re-pricing discount) and / or publicly available databases assessing the rates of similarly-situated medical providers in like Florida geographies (*e.g.*, AHCA's publicly available databases).  Defendants erred in deciding to not fully indemnify SCV by only tendering a payment of $166,179.71 in relation to a total billed amount of $359,287.00.

45.     By the terms of the Plan (and pursuant to Florida law regardless), defendants had a duty to, among other things, properly investigate the subject medical services, adjust / investigate the subject SCV claim relating to such services, and fully indemnify SCV in relation to same.

12

46. Defendants failed SCV in these regards (most notably with respect to their failure to pay the benefits due and owing under the Plan), which breached the Plan and / or violated Florida law.

47. As a direct, foreseeable, and proximate result of defendants' breaches of their obligations under the Plan, SCV has suffered and continues to suffer damages.

48. SCV has no other adequate remedy other than this lawsuit to address the injuries it has suffered as a result of defendants' underpayment of the subject health insurance benefits.

49. As a further result of defendants' refusal to fully indemnify SCV, SCV has been forced to retain legal counsel to represent it in this matter and is accordingly entitled to recover its reasonable attorneys' fees and costs pursuant to Section 627.428 of the Florida Statutes or as otherwise awardable.

WHEREFORE, Plaintiff, Surgery Center of Viera, LLC, requests the entry of judgment against Defendants, Cigna Health and Life Insurance Company, Harris Medical Plan, and Harris Corporation for liability and for damages including, but not limited to, past-due contractual benefits, attorneys' fees pursuant to Section 627.428 of the Florida Statutes or as otherwise awardable, costs incurred bringing this action, and for such other relief as this Court deems equitable, just and proper.

## COUNT III – UNJUST ENRICHMENT

SCV re-alleges Paragraphs 1 through 35 as if fully set forth herein, and further alleges as follows.

50. SCV conferred a direct benefit upon defendants by providing defendants' insured / member (D.G.) with medical services to which the insured was entitled under the Plan as evidenced by defendants' partial indemnification relating to same.

51. Defendants voluntarily accepted and received the benefit conferred by SCV, with the knowledge that SCV expected to be paid the reasonable value of its services; *i.e.*, SCV's usual, customary, and reasonable charges as prescribed by reasonable, negotiated re-pricing vendor PMCS, or, for that matter, as prescribed in the Plan or even the Florida's publicly available AHCA database assessing rates of various medical providers of like kind within like geography.

52. Defendants have not paid the value of the benefit conferred by SCV in that defendants have significantly underpaid SCV's claim for the medical services provided to D.G.

53. Defendants' underpayment results in a windfall for defendants in that, for examples, (a) defendants collect premiums in return for agreeing to properly indemnify providers, like SCV, that render covered medical services, and / or (b) defendants enjoy an unearned profit (and interest and / or investment returns) on the wrongly withheld insurance benefits.

54. It is unjust under the circumstances for defendants to underpay SCV's claim.

55. SCV has no other adequate remedy other than this lawsuit to address the injuries it has suffered as a result of defendants' underpayment of the subject health insurance benefits.

56. As a further result of defendants' refusal to fully indemnify SCV, SCV has been forced to retain legal counsel to represent it in this matter and is accordingly entitled to recover its reasonable attorneys' fees and costs pursuant to Section 627.428 of the Florida Statutes or as otherwise awardable.

WHEREFORE, Plaintiff, Surgery Center of Viera, LLC, requests the entry of judgment against Defendants, Cigna Health and Life Insurance Company, Harris Medical Plan, and Harris Corporation for liability and for damages including, but not limited to, past-due contractual benefits, attorneys' fees pursuant to Section 627.428 of the Florida Statutes or as otherwise awardable, costs incurred bringing this action, and for such other relief as this Court deems

equitable, just and proper.

## COUNT IV – *QUANTUM MERUIT*

SCV re-alleges Paragraphs 1 through 35 as if fully set forth herein, and further alleges as follows.

57. SCV conferred a direct benefit upon defendants by providing defendants insured / member (D.G.) with medical services to which he was entitled pursuant to the Plan.

58. SCV billed defendants usual, customary, and reasonable charges for the services as prescribed by reasonable, re-pricing vendor PMCS or, for that matter, as prescribed in the Plan or Florida's publicly available AHCA database assessing rates of various medical providers of like kind within like geography. The billed charges represent the fair market value of the services rendered.

59. Defendants received the bill from SCV but underpaid SCV for the services.

60. SCV is entitled to reasonable compensation for the services (*i.e.*, *quantum meruit*), which is by no means accomplished by the unsubstantiated 47% claim underpayment but is reflected in reasonable, unbiased sources such as Florida's publicly available AHCA database or the third-party re-pricing vendor PMCS assessments of SCV's rates.

61. The circumstances are such that it would be inequitable for defendants to retain the benefit of the subject medical services without paying SCV the proper value for same.

62. SCV has no other adequate remedy other than this lawsuit to address the injuries it has suffered as a result of defendants' underpayment of the subject health insurance benefits.

63. As a further result of defendants' refusal to fully indemnify SCV, SCV has been forced to retain legal counsel to represent it in this matter and is accordingly entitled to recover its

reasonable attorneys' fees and costs pursuant to Section 627.428 of the Florida Statutes or as otherwise awardable.

WHEREFORE, Plaintiff, Surgery Center of Viera, LLC, requests the entry of judgment against Defendants, Cigna Health and Life Insurance Company, Harris Medical Plan, and Harris Corporation for liability and for damages including, but not limited to, past-due contractual benefits, attorneys' fees pursuant to Section 627.428 of the Florida Statutes or as otherwise awardable, costs incurred bringing this action, and for such other relief as this Court deems equitable, just and proper.

**COUNT V – VIOLATION OF SECTION 627.64194 OF THE FLORIDA STATUTES**

SCV re-alleges Paragraphs 1 through 35 as if fully set forth herein, and further alleges as follows.

64. Cigna is an insurer governed by Chapter 627 of the Florida Statutes.

65. SCV provided nonemergency services to D.G. The services are covered services pursuant to Section 627.64194 of the Florida Statutes.

66. SCV billed Cigna, specifying the nature of the services in its claim submission package and usual, customary, and reasonable charges for such services. The billed charges represent the fair market value of the services rendered.

67. Cigna rendered a claim decision (which the Harris defendants endorsed) that grossly underpaid SCV for the services rendered to D.G.

68. Cigna (and the Harris defendants by extension, as the presumed Plan sponsors) is required,[10] pursuant to Sections 626.64194(4) and 626.64194(5) of the Florida Statutes (both of which *via* Section 626.64194(4) refer to Section 641.513(5) in the following regard), to indemnify

---

[10] "Presumed" because, defendants have wrongly withheld the administrative records.

SCV for the subject medical services in an amount equal to the lesser of: (a) SCV's charges, (b) the usual and customary provider charges for similar services in the community where SCV provides services, or (c) the charge mutually agreed to by SCV and Cigna within sixty days of SCV's claim submission.

69. Cigna's approximate 47% claim underpayment decision (and the Harris defendants' approximate 47% claim underpayment, presuming, again, that the Plan is self-funded)[11] comes nowhere close to satisfying Sections 626.64194(4) and 626.64194(5).

70. Defendants have failed to comply with Section 627.64194 of the Florida Statutes by underpaying SCV for the subject medical services.

71. SCV has no other adequate remedy other than this lawsuit to address the injuries it has suffered as a result of defendants' underpayment of the subject health insurance benefits.

72. As a further result of defendants' refusal to fully indemnify SCV, SCV has been forced to retain legal counsel to represent it in this matter and is accordingly entitled to recover its reasonable attorneys' fees and costs pursuant to Section 627.428 of the Florida Statutes or as otherwise awardable.

WHEREFORE, Plaintiff, Surgery Center of Viera, LLC, requests the entry of judgment against Defendants, Cigna Health and Life Insurance Company, Harris Medical Plan, and Harris Corporation for liability and for damages including, but not limited to, past-due contractual benefits, attorneys' fees pursuant to Section 627.428 of the Florida Statutes or as otherwise awardable, costs incurred bringing this action, and for such other relief as this Court deems equitable, just and proper.

---

[11] "Presuming" because, again, defendants have wrongly withheld the administrative records.

**JURY DEMAND**

73. Plaintiff, Surgery Center of Viera, LLC, demands a trial by jury on all issues so triable as a matter of right.[12]

Dated this 5th day of July, 2019.

          Respectfully Submitted,

          **CALLAGY LAW, P.C.**
          1900 N.W. Corporate Blvd., Ste 310W
          Boca Raton, Florida  33431
          (561) 405-7966 (o); (201) 549-8753 (f)

          /s/ Jeffrey L. Greyber
          **Jeffrey L. Greyber, Esq.**
          Fla. Bar No. 41103
          **Ciara E. Lister, Esq.**
          Fla. Bar No. 1015511
          jgreyber@callagylaw.com
          clister@callagylaw.com
          hcasebolt@callagylaw.com
          *Attorneys for Plaintiff*

---

[12] SCV reserves the right to amend this complaint to add an extra-contractual / bad faith count or file such a lawsuit subsequent to the conclusion of this lawsuit.  If the former course unfolds, the extra-contractual count would need to be abated / stayed pending resolution of the contractual dispute pursuant to Florida law.  A Civil Remedy Notice is either being filed contemporaneously with the filing of this complaint or in the near future.